# EXHIBIT A

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
RICHMOND COUNTY, GEORGIA
**2019RCCV00065**
MICHAEL N. ANNIS
FEB 04, 2019 08:54 PM

Hattie Holmes Sullivan, Clerk
Richmond County, Georgia

IN THE SUPERIOR COURT FOR THE COUNTY OF

RICHMOND, STATE OF GEORGIA

Civil Action File No. _____

| | |
|---|---|
| MICHAEL WOODARD | : |
| | : |
| Plaintiff | : |
| | : |
| Vs. | : |
| | : |
| XYTEX TISSUE SERVICES, LLC, | : |
| and/or A.B.C. that domestic limited | : |
| liability company, individual partnership, profit corporation and/or company | |
| doing business as the same on February 5, 2017, | : |
| | : |
| First Defendant | : |
| | : |
| And | : |
| | : |
| AIRGAS USA, LLC, and/or A.B.C. | : |
| that foreign limited liability company | : |
| individual partnership, profit corporation : and/or company doing business as the same : on February 5, 2017, | |
| | : |
| Second Defendant | : |
| | : |
| and | : |
| | : |
| CHART INDUSTRIES, INC, | : |
| And/or A.B.C. that foreign limited | : |
| Liability company, individual partnership, : Profit corporation and/or company doing : Business as the same on February 5, 2017 | : |
| | : |
| Third Defendant | : |

Complaint
Page 1 of 12

And                                                              :
                                                                 :
CAROLINA PIPING SERVICES, INC.,                                  :
and/or A.B.C. that foreign limited liability : company,
individual partnership, profit : corporation and/or
company doing business : as the same on February 5,
2017,                                                            :
                                                                 :

## COMPLAINT

COMES NOW the Plaintiff and shows the following:

1.

That the Defendant, **Xytex Tissue Services, LLC** (thereinafter referred to as "**Xytex**"), is a domestic limited liability company licensed to do business in the State of Georgia with its principal office located at 1100 Emmett Street, Augusta, Georgia and may be served with process by service upon its registered agent Melissa R. Jacobs, at 1100 Emmett Street, Augusta, Richmond County, Georgia30904

2.

That the Defendant, Airgas USA, LLC (hereinafter referred to as "Airgas"), is a foreign limited liability company licensed to do business in the State of Georgia with its principal office at 259 North Radnor-Chester Road, Suite 100, Radnor, Delaware County, Delaware and may be served

with process by service upon registered agent, C.T. Corporation System, 289

S. Culver Street, Lawrenceville, Gwinnett County, Georgia 30046-4805.

3.

That the Defendant, **Chart Industries, Inc.**, is a foreign profit corporation licensed to do business in the State of Georgia with its principal office at 1 Infinity Corporate Centre Drive, Suite 300, Garfield Heights, Cuyahoga County, Ohio and may be served with process upon its registered agent National Registered Agents, Inc., 289 Culver Street, Lawrenceville, Gwinnett County, Georgia.

4.

That the Defendant, Carolina Piping Services, Inc., is a domestic corporation licensed to do business in the State of Georgia with its principal office at 8600 Wilkinson Blvd., Charlotte, Mecklenburg County, North Carolina and may be served with process by service upon its registered agent Harold Green, 141 Ashton Woods Court, Mount Holly, Gaston County, North Carolina 28120-9482.

5.

That venue is proper in this County.

6.

After June 6, 2016, the defendant **Xytex Tissue Services, LLC** began building a "Shipping Warehouse" at 1100 Emmit Street, Xytex represented

to Augusta/Richmond County as a shipping warehouse not a storage facility with hazardous liquid and gas.

7.

**Chart Industries, Inc.** and **Carolina Piping Services, Inc.** (hereinafter "**Chart**" and "**Carolina Piping**") performed the design and fabrication of the pipes, valves and connections leading from Airgas's bulk liquid nitrogen holding tank to Xytex's freezers.

8.

**Carolina Piping** installed the piping to serve the Xytex freezers with relief valves set at 22 pounds per square inch. These relief valves would release liquid nitrogen when the pressure exceeded 22 pounds per square inch.

9.

**Xytex's** emergency response procedures contained instructions to employees that were inadequate or unsafe to implement in the event of a dangerous spill.

10.

**Xytex** put no warning signs on the entrances to the Shipping Warehouse to warn people the building store or contained hazardous gases.

11.

**Xytex** refused to insulate the piping in the system to cut costs but thereby increased the danger to others in the event of a spill.

Complaint
Page 4 of 12

12.

**Xytex** did not vent the relief valves to the outside to cut costs.

13.

On December 13, 2016 **Airgas** installed the bulk tank at the exterior east wall of the "Shipping Warehouse."

14.

On December 22, 2016, **Airgas** filled the bulk tank with 1,298 gallons of liquid nitrogen.

15.

On December 27, 2016, **Carolina Piping** installed the piping system for **Xytex**.

16.

**Chart** and **Carolina Piping** used 22 pounds per square inch relief valves to enable the liquid nitrogen to be colder and more efficient.

17.

**Chart** and **Carolina Piping** did not insulate the piping to the **Xytex** freezers nor did it vent the relief valves to the outside.

18.

On January 9, 2017, **Airgas** connected the piping system to the bulk tank.

19.

On January 16, 2017, **Airgas** delivered additional liquid nitrogen to the bulk tank.

20.

On January 19, 2017, **Airgas** delivered three new storage freezers to **Xytex**. When **Xytex** attempted to fill the freezers, the relief valves began opening and release liquid

nitrogen to relieve pressure on the system.  **Xytex** called **Airgas** for assistance.

21.

On January 24, 2017, **Airgas** returned to **Xtex** to deliver a fourth freezer and perform an inspection required by the Food and Drug Administration.

22.

**Airgas** employees discovered the bulk tank's pressure was 30 pounds per square inch but the relief valves were 22 pounds per square inch which, if connected, would cause the pressure relief valves to open and spill liquid nitrogen gases.  The **Airgas** employees recalibrated the bulk tank to 20 pounds per square inch.

23.

The **Airgas** employees also advised that **Xytex** that the **Airgas** Field Services needed to change the decal on the tank and would let the appropriate persons know.

24.

The tank decal instructs the gas deliveryman what the proper pressure is for the tank.  The **Airgas** employees left the site without removing the erroneous decal or warning the future deliverymen of the correct pressure.  So, the tank was left with a decal showing the pressure should be set at 30 pounds per square inch.  The decal read: "ATTENTION DRIVER: MAINTAIN 30 PSI.  HOUSE LINE SET PRESSURE: 30 PSI."

25.

On February 5, 2017, an Airgas deliveryman from Airgas Merchant Gases filled the bulk tank by delivering 1,744 gallons of liquid nitrogen which over filled the tank.  When he left, the bulk tank was pressurized to 30 pounds per square inch, as instructed on the bulk tank decal.  While filling the tank, the deliveryman heard the alarm going off, but

could not determine where it was coming from. So, he left the premises.

26.

Within minutes, the pressure relief valves began to open and spill liquid nitrogen gases into the "Shipping Warehouse." The oxygen sensor alarm began to alert when the oxygen level in the building dropped below 17%. The motion detector alarm began to sound off because of a dense low lying fog developing in the "Shipping Warehouse."

27.

Between 1:51 pm and 3:20 pm the oxygen level in the "Shipping Warehouse" dropped to .2%.

28.

The Augusta Richmond County Sheriff's Department deputies, including Detective Michael Woodard, responded to a burglar alarm. Anita Wylds, a **Xytex** employee, also responded to the burglar alarm.

29.

Inside the building a low hanging 3 foot dense fog of nitrogen was overwhelming the oxygen in the air.

30.

Following the Xytex emergency response manual, Ms. Wylds entered the building without protective clothing, without a safety mask, without gloves and attempted to close the valves. She was overcome by a lack of oxygen and dropped into the dense low lying fog. She was severely injured.

31.

At the time, Ms. Wylds fell into the low lying dense for Sargent Greg Meagher is away from the door. When Sargent Greg Meagher returns to the door, the low lying fog is so dense Sargent Greg Meagher is unable to see Ms. Wylds. Sargent Greg Meagher calls for Ms. Wylds, but he does not hear her. When he does not see or hear Ms. Wylds, Sargent Greg Meagher enters the building to search for her. He walks toward the area of the building behind the "Shipping Warehouse." When Sargent Greg Meagher is returning from the rear of the building, he clenches his chest and falls backwards. He was too overcome by the lack of oxygen. After a few moments, he raises his arm twice as if to draw the attention of his other deputies --- then dies

32.

Upon arrival Detective Michael Woodard is informed by other members of the Richmond County police force that Anita Wylds and Sargent Greg Meagher are in the building. Deputy Diggs informed Michael Woodard that using a mask inside the building to rescue Ms. Wylds and Sargent Woodard was not effective.

33.

Michael Woodard retrieved an air pack from the Richmond County Fire engine that was present at the scene. While Woodard was attempting to enter the building two Richmond County Firefighters brought Sargent Meagher outside and began CPR.

34.

Detective Michael Woodard entered the building to look for Ms. Wylds. Upon entry he encountered the low hanging 3 foot dense fog of nitrogen gas. Two firefighters also entered

the building and located Ms. Wylds. Detective Woodard assisted the firefighters in getting Ms. Wylds out of the building.

35.

The defendants, individually and in concert, committed the following negligent acts and omissions that contributed the injuries sustained by Michael Woodard.

36.

**Airgas** failed to obtain the required inspection of the bulk tank or obtain and operating permit.

37.

**Airgas** failed to change the decal on the tank instructing the deliveryman to fill and pressurize it to 30 pounds per square inch, which caused the 22 pounds per square inch valves to open and spill liquid nitrogen into the air. The liquid nitrogen instantaneously changed into gas and blanketed the "Shipping Warehouse" with low lying dense for overwhelming the oxygen in the air.

38.

**Airgas** failed to notify the field operations personnel that the bulk tank pressure had been recalculated to less than 22 pounds per square inch and should not exceed that pressure or the release valves in the "Shipping Warehouse" would open and spill liquid nitrogen into the building.

39.

**Airgas** failed to have the bulk tank inspected by the State Fire Marshal or obtain and operating permit.

40.

**Chart Industries** and **Carolina Piping** negligently designed and installed the piping system by failing to provide for insulation of the piping downstream from the tank and/or venting the relief valves outside the building.

41.

**Xytex** negligently contributed to the loss by the following acts.

42.

**Xytex** developed an emergency response plan which actually put people at risk by instructing them to turn off valves in the event of an emergency without requiring emergency safety gear.

43.

**Xytex** permitted the building as a "Shipping Warehouse" but used it as a liquid nitrogen freezer storage facility.

44.

**Xytex** failed to post hazardous gas warnings at the entrances of the building to warn people of the danger in the event of a spill.

45.

**Xytex** placed costs over safety when it failed to insulate piping or vent the piping outside the building.

46.

The conduct of these defendants under the circumstances was grossly negligent and/or in conscious disregard for the life and safety of others.

47.

The conduct of these defendant under the circumstances alleged in this complaint made it reasonably foreseeable that their actions would cause emotional distress.

48.

The plaintiff was within the zone of danger and it was foreseeable that he would suffer emotional damages.

49.

The defendant's negligent actions caused an actual physical impact on the plaintiff which caused an injury.

WHEREFORE the plaintiffs pray damages for the following:

A. Special damages and general damages for $1,000,000.00

B. Special and general damages medical expenses and general damages for conscious pain and suffering in excess sum of which cannot be determined until time of trial; and

C. Punitive damages of an equal amount or greater to deter future disregard for the life and safety of others by these defendants.

PLAINTIFFS HEREBY DEMAND A JURY TRIAL.

This 4th day of February, 2019.

/s/ Joseph T. Rhodes
Joseph T. Rhodes
GA State Bar No. 309847
Attorney for Plaintiff

HUNTER RHODES
266 Greene Street
Augusta, GA 30901
706-724-3156
jrhodes@hunterrhodes.com

Complaint
Page 12 of 12